UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**CRYSTAL L. CASTLEBERRY,**

    **PLAINTIFF,**

v.                                  CIVIL ACTION NO.: 2:26-cv-00071

**TRUIST BANK, a corporation**
**Licensed to do business in the**
**State of West Virginia; and**
**TRUIST FINANCIAL CORPORATION,**
**a corporation licensed to do business**
**in the State of West Virginia,**

    **DEFENDANTS.**

## COMPLAINT

**COMES NOW** the Plaintiff, Crystal L. Castleberry, by and through counsel and upon knowledge, information, and belief, for her Complaint hereby alleges and avers as follows:

## THE PARTIES

1.  Plaintiff, Crystal L. Castleberry, ("Plaintiff") is and was at all times relevant herein a resident of Monongalia County, West Virginia.

2.  Defendant, Truist Bank ("Truist Bank"), is and was at all times relevant herein a corporation existing by and under the laws of the State of North Carolina and licensed to do business in the State of West Virginia engaging in the business of banking, including loaning money in the form of lines of credit. Truist Bank formerly was doing business as Branch Banking and Trust ("BB&T"). As successor to BB&T, Truist Bank is liable for all viable claims of Plaintiff related to the conduct of BB&T and itself.

3. Defendant, Truist Financial Corporation ("Truist Financial") is and was at all times relevant herein a corporation existing by and under the laws of the State of North Carolina and licensed to do business in the State of West Virginia engaging in the business of banking, including loaning money in the form of lines of credit. Truist Bank formerly was also formerly doing business as BB&T. As successor to BB&T, Truist Financial is liable for all viable claims of Plaintiff related to the conduct of BB&T and itself.

4. Truist Bank and Truist Financial, collectively, shall be referred to as "Defendants" or "Truist".

## JURIDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the amount in controversy is in excess of $75,000.00, exclusive of interest and costs, and Plaintiff and Defendants are citizens of different states as well as pursuant to the Federal Fair Credit Reporting Act, 15 U.S.C §1681, *et. seq*.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants regularly conducts business in this District and a substantial part of the acts and/or omissions giving raise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

7. On or about March 5, 2002, Plaintiff entered into a line of credit agreement with BB&T through its executive banking office in Charleston, West Virginia, whereby Plaintiff was provided a line of credit of $25,000.00 ("LOC").

8. The LOC does not contain a term-out provision or expiration date.

9. The LOC required interest-only payments.

10. During the life of the LOC, Plaintiff made timely payments required under the LOC.

11. Sometime prior to March 1, 2017, Plaintiff received correspondence from BB&T stating that the LOC would expire on March 1, 2017.

12. BB&T advised Plaintiff that the LOC either need to be renewed or payments could be set up for the repayment therefore "as per the agreement."

13. However, after reviewing the language of the LOC with Plaintiff, BB&T was unable to identify any contractual provision identifying the maturity of the LOC or permitting a demand for repayment.

14. Despite repeated requests, BB&T never provided any document reflecting an agreement by Plaintiff that would allow it to make the demand for repayment it was making.

15. Plaintiff offered to enter into a renewed line of credit with negotiated terms, but BB&T refused.

16. BB&T eventually proposed a modification agreement, but the terms were unacceptable to Plaintiff.

17. Plaintiff retained the services of an attorney to attempt to remedy the matter with BB&T's legal department.

18. BB&T's legal department never provided a response to Plaintiff's prior counsel.

19. Instead, BB&T's business representative advised Plaintiff that although she was "now obligated to repay the loan's principal and accrued interest", "BB&T will continue to accept payments of accrued interest only- based on the repayment provisions stated in your Agreement for the draw period."  In addition, BB&T stated "[h]owever, we look forward to working with you to agree upon terms to repay the loan in full."

20. BB&T issued a billing statement to Plaintiff that called for a payment that was more than was required by the LOC.

21. Because Plaintiff desired to repay the loan on fair and negotiated terms, her prior counsel submitted a letter to BB&T offered a new payment plan.

22. Plaintiff's prior counsel also requested BB&T correct the billing statement so as to avoid any potential negative effect on Plaintiff's credit.

23. Plaintiff's counsel never received a response from BB&T with respect to this new offer for a separate agreement to repay the original LOC but did receive monthly statements with interest-only payments due.

24. For the next several years, Plaintiff continued to make, and BB&T continued to accept, interest-only payments.

25. During this time, BB&T was silent with respect to Plaintiff's offer for repayment.

26. In July of 2021, Plaintiff received a statement that requested a payment which exceeded the interest-only amount required in the LOC.

27. By letter dated August 13, 2021, Plaintiff disputed the amount due.

28. BB&T never replied to the correspondence disputing the amount due.

29. Thereafter, for nearly two years from August 13, 2021, to February 2023, Plaintiff received regular monthly statements seeking payment once again of interest only.

30. By letter dated February 21, 2023, Truist, through its branch manager, Vicki Phares, demanded that Plaintiff again pay 2.5% of the total balance by monthly payments although all parties agreed that there was no such term out provision contained within the evergreen note.

31. After receiving said letter, Plaintiff attempted to contact Vicki Phares on more than one occasion but did not receive a response.

32. On or about March 28, 2023, Plaintiff sent an email to Ms. Phares disputing that 2.5% of the balance was owed by April 5, 2023, as was billed in the billing statement received in late March as there was no term out provision and requesting that Truist recognize this well-known fact and refrain from attacking Plaintiff's credit score/reputation with false information. Further by that email, Plaintiff stated that "I would like to start making principal payments under some plan, albeit voluntarily due to the fact that the terms of my note do not require the same."

33. In the March 28, 2023, email Plaintiff requested that someone from Truist contact her about the situation.

34. Because she did not receive any response to this email, Plaintiff called Truist customer service to dispute the statement minimum payment and by letter dated April 3, 2023, appropriately disputed the minimum payment of $614.07 claimed to be due on April 5, 2023.

35. Then in March of 2023, Plaintiff received a statement.

36. On or about July 6, 2023, Plaintiff received a "Modification to Preferred Line Agreement" dated June 21, 2023, including terms not agreed to by Plaintiff and threatening that "[i]f this Modification Agreement is not signed and returned by July 7, 2023, then the full balance will be due immediately provided in the Preferred Line Agreement." This threat was made even though Truist knew there was no term out provision in the Agreement and Plaintiff had not defaulted in any way. This "Modification to Preferred Line Agreement" requested that it be mailed back to Truist to the attention of Vicki Phares.

37. By letter dated July 6, 2023, mailed and hand delivered to Truist Bank to Vicki Phares's attention, Plaintiff disputed that the full amount of the note would be due on July 7, 2023, as the original note had no such provision allowing for demand of full payment when Plaintiff complied with its terms. Additionally, Plaintiff again expressed her willingness to negotiate a

repayment plan although such was not a requirement in the note in question. Finally, this July 6, 2023, letter was stated by Plaintiff to be a formal Notice of Claim against Truist presumably triggering some response by Truist's legal department.

38. No response was received from Vicki Phares at any time.

39. Several weeks went by without a response from Truist.

40. On or about September 1, 2023, Plaintiff received a letter dated August 25, 2023, from Alexis Spivey, a client advocate for Truist, who stated that Truist had referred the situation to its Default Recovery Department despite the fact that there had been no default on the note.

41. Plaintiff contacted Alexis Spivey and spoke to her on several occasions. Ms. Spivey contacted the legal department of Truist but the matter remained unresolved as Truist would not follow the terms of the original note and further refused to negotiate a term out of the principal balance.

42. Plaintiff continued to make interest only payments on the account for the months of September, October, November and December of 2023, as well as for January of 2024.

43. In January of 2024, Plaintiff received a document dated December 4, 2023, stating that the account related to the original note had been closed despite the fact that the statement of the account dated December 11, 2023, showed that the account was open but demanded full payment.

44. Plaintiff made the customary interest only payment in January 2024.

45. Thereafter, in February of 2024, plaintiff went online to make a payment of interest only on the account but had found that the account was no longer available as a listed account.

46. Because she could not make a payment online, Plaintiff presented herself to a Truist branch location in Charleston, West Virginia where she inquired about making a payment via check

on the account. Truist's employee or agent looked up Plaintiff's accounts and advised that the line of credit account in question had been "charged off" and that no payment would be accepted.

47. Truist terminated the LOC in violation of the terms set forth therein.

48. Plaintiff made calls once again to Truist but none were returned.

49. Sometime in March of 2024, when checking her credit score, Plaintiff realized that Truist had reported that Plaintiff owed the full principal balance of over $24,000.00, but had failed to pay the same resulting in a charge off.

50. Plaintiff's credit score was significantly lowered by Truist's false reporting.

51. Plaintiff made attempts to dispute the notations made by Truist to the credit reporting agencies, but this was to no avail as Truist persisted in its position and failed to truthfully advise such agencies that the amount was disputed.

52. Truist made no effort to formally collect the principal sum prior to placing such negative and false information on the credit reports of Plaintiff.

53. Truist did not warn Plaintiff at any time that the account would be charged off and that her credit would suffer the consequences.

54. Since this charge off, Plaintiff has been denied refinancing of a vehicle, incurred higher interest on a loan actually obtained, and suffered other economic and non-economic damages as a result of Defendants' actions.

## COUNT I - VIOLATION OF THE FAIR CREDIT REPORTING ACT

55. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs as if fully set forth herein.

56. Defendants are furnishers of information to consumer reporting agencies.

57. Defendants furnished information about Plaintiff to one or more consumer reporting agencies.

58. The information furnished by Defendants about Plaintiff was inaccurate.

59. Plaintiff notified the consumer reporting agencies of the disputed information.

60. Defendants failed to modify, delete, or permanently block the reporting of information that was inaccurate or could not be verified.

61. Defendants' actions were willful and/or negligent.

62. As a direct and proximate result of Defendants' willful and/or negligent failure to comply with the Fair Credit Reporting Act, Plaintiff has suffered actual damages, including but not limited to: damage to credit reputation, denial of credit, higher costs of credit and other damages.

## COUNT II - VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT

63. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs as if fully set forth herein.

64. Defendants engaged in unfair or deceptive acts or practices in the conduct of commerce.

65. Defendants' improper reporting of inaccurate information about plaintiff to consumer reporting agencies constitutes an unfair or deceptive act or practice in violation of W. Va. Code § 46A-6-104.

66. Defendants' conduct as set forth herein otherwise violates the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101, *et seq*.

67. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, plaintiff has suffered actual damages, including but not limited to: damage to credit reputation, denial of credit, higher costs of credit, and other damages.

### COUNT III - DEFAMATION

68. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs as if fully set forth herein.

69. Defendants made false statements about Plaintiff.

70. Defendants reported false information about Plaintiff's credit history, financial status, and/or creditworthiness to consumer reporting agencies.

71. The false statements made by Defendants were published to third-parties, including consumer reporting agencies and entities that accessed Plaintiff's credit reports.

72. Defendants were at fault in publishing these false statements.

73. Defendants knew or should have known that the information it reported about Plaintiff was false.

74. Defendants acted with malice or with reckless disregard for the truth or falsity of the information it reported about Plaintiff.

75. As a direct and proximate result of Defendants' defamatory statements, Plaintiff has suffered special harm, including but not limited to: damage to credit reputation, denial of credit, higher costs of credit, and other damages.

### COUNT IV - UNCONSCIONABLE CONDUCT

76. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs as if fully set forth herein.

77. Defendants engaged in conduct that was unconscionable.

78. Defendants' improper reporting of inaccurate information about Plaintiff to consumer reporting agencies, and its failure to correct such information after being notified of its inaccuracy, constitutes unconscionable conduct in violation of W. Va. Code § 46A-2-121.

79. Plaintiff suffered damages as a result of Defendants' unconscionable conduct.

80. As a direct and proximate result of Defendants' unconscionable conduct, Plaintiff has suffered actual damages, including but not limited to: damage to credit reputation, denial of credit, higher costs of credit, and other damages.

### COUNT V – BREACH OF CONTRACT

81. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs as if fully set forth herein.

82. The LOC constitutes a contract between Plaintiff and Defendants.

83. Defendants' acts as aforesaid constitute a breach of contract.

84. Plaintiff suffered damages as a result of Defendants' breach.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff against Defendants and grant the following relief:

a. Actual damages in an amount to be determined at trial for economic losses including denial of credit, higher interest rates, and lost opportunities.

b. Actual damages in an amount to be determined at trial for non-economic losses including annoyance, inconvenience, and damage to reputation.

c. Statutory damages as provided by law.

d. Punitive damages in an amount to be determined at trial for Defendants' willful, wanton, and/or reckless conduct.

  e. An order pursuant requiring Defendants to correct all inaccurate information reported to consumer reporting agencies about Plaintiff and to implement procedures to prevent similar violations in the future.

  f. A refund of any excess charges.

  g. Reasonable attorney's fees and costs incurred in bringing this action.

  h. Pre-judgment and post-judgment interest as allowed by law.

  i. Such other relief as the Court deems just and proper.

Plaintiff demands a jury trial on all matters so triable.

    **Respectfully submitted,**

    **CRYSTAL L. CASTLBERRY,**

    **By Counsel.**

    <u>*/s/ Stephen E. Hastings*  *1/29/2026*</u>
    R. Scott Long, Esquire (#2238)
    Raj A. Shah, Esquire (#11269)
    Stephen E. Hastings, Esquire (#9065)
    David F. Nelson, Esquire (#5754)
    **HENDRICKSON & LONG, PLLC**
    214 Capitol Street
    Charleston, West Virginia 25301
    (304) 346-5500
    (304) 346-5515 (facsimile)
    scott@handl.com
    rshah@handl.com
    shastings@handl.com
    dnelson@handl.com