**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

CRYSTAL L. CASTLEBERRY,

Plaintiff,

v. CIVIL ACTION NO. 2:26-cv-00071

TRUIST BANK,

Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the Plaintiff's *Complaint* (Document 1), *Truist Bank's Motion for Judgment on the Pleadings* (Document 26), *Defendant Truist Bank's Memorandum in Support of Its Motion for Judgment on the Pleadings* (Document 27), the Plaintiff's *Response to Defendant Truist Bank's Motion for Judgment on the Pleadings* (Document 37), *Defendant Truist Bank's Reply Memorandum in Support of Motion for Judgment on the Pleadings* (Document 45), and the *Defendant's Notice of Supplemental Authority* (Document 50), as well as all attached exhibits. For the reasons stated herein, the Court finds that the motion should be granted in part.

## FACTUAL ALLEGATIONS

The Plaintiff, Crystal L. Castleberry, initiated this lawsuit against Truist Bank (formerly BB&T) on January 29, 2026. Ms. Castleberry entered into a line of credit agreement with BB&T in Charleston, West Virginia, on or about March 5, 2002. BB&T provided her with a line of credit of $25,000. The Line of Credit (LOC) agreement required only interest payments and did not

include a term-out provision or expiration date. Ms. Castleberry made timely payments throughout the life of the LOC.

BB&T sent Ms. Castleberry a letter stating that the LOC would expire on March 1, 2017, and the LOC would need to be renewed, or repayments would need to begin. "BB&T was unable to identify any contractual provision identifying the maturity of the LOC or permitting a demand for repayment" and provided no document permitting its repayment demand. (Compl. at ¶¶ 13-14.) BB&T declined her offer to enter into a renewed line of credit with negotiated terms, and the Plaintiff found a modification agreement proposed by BB&T unacceptable. BB&T's legal department did not respond to an effort by her prior counsel to resolve the matter. BB&T agreed to continue to accept accrued interest-only payments while working with the Plaintiff to "agree upon terms to repay the loan in full." (*Id.* at ¶ 19.) BB&T issued a billing statement for a higher payment and did not respond to a letter from the Plaintiff's prior counsel, requesting that the billing statement be corrected. BB&T also did not respond to additional communication from the Plaintiff's prior counsel offering a new payment plan. BB&T did begin sending monthly statements with interest-only payments due, which Ms. Castleberry paid and BB&T accepted for the next several years.

In July 2021, Ms. Castleberry received a statement requesting payment in excess of the interest-only payment required in the LOC. BB&T failed to respond to a letter, dated August 13, 2021, wherein Ms. Castleberry disputed the amount due, but she again began receiving monthly statements for interest only until February 2023. In a letter dated February 21, 2023, a branch manager at Truist demanded monthly payments of 2.5% of the total balance. Ms. Castleberry was unable to reach the branch manager by phone. By email sent on March 28, 2023, she disputed a

statement showing a 2.5% payment due. She received no response and called Truist customer service to dispute the statement, in addition to sending a dispute letter dated April 3, 2023.

On or about July 6, 2023, Ms. Castleberry received a "Modification to Preferred Line Agreement" dated June 21, 2023. The "modification" included terms she did not agree to, and it stated that the full balance of her loan would be due immediately if she failed to sign. Ms. Castleberry promptly sent a letter disputing that the full amount of the note would be due if she did not agree to the modification and expressing her willingness to negotiate a repayment plan. On or about September 1, 2023, Ms. Castleberry received a letter indicating that Truist had referred the situation to its Default Recovery Department. The Plaintiff continued communicating with Truist personnel in an effort to resolve the situation and continued to make interest only payments.

In January 2024, Ms. Castleberry "received a document dated December 4, 2023, stating that the account related to the original note had been closed despite the fact that the statement of the account dated December 11, 2023, showed that the account was open but demanded full payment." (*Id.* at ¶ 43.) She made her usual interest only payment in January 2024, but the account was no longer available online beginning in February 2024. When she tried to pay in person at a Truist branch, she was told that the LOC account was charged off, and the bank would not accept payment. In March 2024, she checked her credit score and discovered that Truist had reported that her failure to pay the full $24,000 balance resulted in a charge-off, substantially lowering her credit score. She disputed the notations made by Truist, but Truist "persisted in its position and failed to truthfully advise such agencies that the amount was disputed." (*Id.* at ¶ 51.) Truist did not make formal collection efforts for the full principal prior to placing the negative information on the Plaintiff's credit reports and did not warn her that the account would be charged

off, damaging her credit. She has been denied refinancing a vehicle and incurred higher interest charges, in addition to other economic and non-economic damages, since Truist's report to the credit agencies.

The Plaintiff alleges the following causes of action: Count I: Violation of the Fair Credit Reporting Act; Count II: Violation of the West Virginia Consumer Credit and Protection Act; Count III: Defamation; Count IV: Unconscionable Conduct; and Count V: Breach of Contract. She seeks damages for economic and non-economic losses, statutory damages, punitive damages, an order requiring correction of all inaccurate information reported to consumer reporting agencies and implementation of procedures to prevent similar violations, a refund of excess charges, attorney's fees and costs, and pre- and post-judgment interest.

**STANDARD OF REVIEW**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A Rule 12(c) motion tests only the legal sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). "As a general rule, '[w]hen considering a defendant's motion for judgment on the pleadings, the court must base its decision solely on information obtained from the pleadings.'" *Hagy v. Equitable Production Co.*, 2:10-cv-01372, 2011 WL 3031124, at *2 (S.D. W. Va. July 22, 2011) (Goodwin, J.) (quoting *John S. Clark Co., Inc. v. United Nat'l Ins. Co.*, 304 F.Supp.2d 758, 763-64 (M.D.N.C. 2004)). As such, a motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under

Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr. Inc.*, 681 F.Supp.2d 694, 707 n.17 (S.D. W. Va. 2009) (Goodwin, J.).

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679. Furthermore,

the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts. Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Defendant Truist Bank argues that the Plaintiff's claims should be dismissed. It contends that the LOC had a draw period of five years from the date the agreement was signed, March 5, 2002, and the borrower was required to pay the balance after expiration of the draw period. Truist argues that the Plaintiff's Fair Credit Reporting Act (FCRA) claim fails because the complaint does not identify the specific statutory provision at issue. It contends that the Plaintiff's complaint does not allege the elements of an FCRA claim because it does not state that a Consumer Reporting

Agency notified Truist of a dispute submitted by the Plaintiff to trigger Truist's obligation to reinvestigate. It argues that its reporting was accurate based on its position that payments toward the principal were required. Truist further argues it was permitted to unilaterally amend the terms of the LOC, and its letter requiring the Plaintiff to begin making payments can be construed as unilateral modification. Because the Plaintiff admittedly did not make those payments, Truist contends that it reasonably chose to charge off the account, and the report that it had done so was accurate. It further argues that any dispute is not objectively and readily verifiable, and therefore not actionable under 15 U.S.C. § 1681s-2(b). Truist contends that the Plaintiff's claims under the West Virginia Consumer Credit and Protection Act (WVCCPA), for defamation, and for unconscionable conduct are all preempted by the FCRA. In addition, it argues that the defamation claim should be dismissed because the factual allegations do not demonstrate that Truist made false statements. Finally, Truist argues that the Plaintiff's breach of contract claims should be dismissed because it is "based on a demonstrably false assertion that the principal repayment period had not begun and Plaintiff was not obligated to begin payments on the principal indefinitely or until she personally felt making payment was appropriate." (Def.'s Mem. at 18.)

The Plaintiff argues that Truist's position rests on its effort to add principal repayment terms to a contract that does not contain a provision outlining "the terms under which the principal is to be repaid." (Pl.'s Resp. at 2.) She contends that Truist could not legally modify the terms of the agreement without written notice under W. Va. Code § 46A-3-116, and any claim that she failed to make a payment that was due was false. The Plaintiff contends that there is no requirement that she identify a specific provision of the FCRA in her complaint, and she has set forth factual allegations sufficient to state a claim under FCRA based on the allegation that Truist

falsely reported failure to pay an amount due. She contends that the lack of any such term in the LOC agreement is objectively verifiable and adequately pled. The Plaintiff further contends that the FCRA preempts only state statutory causes of action, and her common law defamation claim should therefore be permitted to proceed. She argues that she has alleged that the Defendant breached the contract by reporting false information to credit reporting agencies in violation of a provision permitting it to furnish information that was "necessary and proper." (Pl.'s Resp. at 11.) She also contends that Truist violated the implied covenant of good faith and fair dealing. The Plaintiff urges the Court to stay, rather than dismiss her state law statutory claims contained in Counts II and IV, until the ultimate resolution of the FCRA claim.

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA contains provisions requiring those who furnish information to consumer reporting agencies to provide accurate information, correct inaccurate information, and investigate any information when its accuracy is disputed. 15 U.S.C. § 1681s-2. Consumer suits are authorized for violations of § 1681s-2(b), which requires furnishers of information to investigate disputed information when notified by a consumer reporting agency of a dispute as to the information's completeness or accuracy. *Id.* §§ 1681n, 1681o. The FCRA imposes similar investigation requirements when consumers bring disputes directly to furnishers of information, but the consumer suit provisions are not applicable to violations of those statutory sections. *Id.* §§ 1681s-2(a); 1681s-2(c); *Barry v. Experian Info. Sols., Inc.*, No. 2:16-CV-09515, 2018 WL 3341785, at *4 (S.D.W. Va. July 6, 2018) (Johnston, J.) (noting that the FCRA bars private suits for violations of § 1681s-2(a) but permits them for violations of § 1681s-2(b)).

The following elements are necessary to prove claims for violations of § 1681s-2(b): "(1) the plaintiff submitted a dispute over the accuracy of information on a credit report to a consumer reporting agency; (2) the agency notified the furnisher of that dispute; and (3) the furnisher failed to conduct a reasonable investigation to determine whether the disputed information can be verified." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 249 (4th Cir. 2025). The Plaintiff has alleged that she "notified the consumer reporting agencies of the disputed information" and the Defendant "failed to modify, delete, or permanently block the reporting of information that was inaccurate or could not be verified." (Compl. at ¶¶ 59-60.) She alleged that her attempts to dispute the reported failure to pay the full balance of the LOC were "to no avail as Truist persisted in its position and failed to truthfully advise such agencies that the amount was disputed." (*Id.* at ¶ 51.) She does not, however, allege that the credit reporting agency notified Truist, as the furnisher, of the dispute.

Because the complaint does not contain factual allegations as to one of the elements of the claim[1], the Court finds that Count One must be dismissed without prejudice. In her response, the Plaintiff argued that if any claim was dismissed, she should be permitted to amend. The Court will not consider a motion to amend embedded within a response to a motion for judgment on the pleadings. However, the Court does find that dismissal without prejudice is appropriate, contrary to the Defendant's argument, because amendment would not necessarily be futile. With the exception of the failure to plead that a credit reporting agency notified Truist of the dispute, her factual allegations would support a claim under § 1681s-2(b). She has alleged that Truist

1 Truist argues that the failure to identify that specific code section at issue also supports dismissal. The Court finds that where the allegations are sufficient to place the Defendant on notice, no special formulation is required. However, to the extent the Plaintiff intended to bring an FCRA claim under any other provision, the allegations do not provide sufficient notice of such a claim.

attempted to unilaterally impose a schedule for payment of the principal of the LOC loan that appeared nowhere in the contract, then charged off the loan and reported the entire balance as unpaid to credit reporting agencies. She alleges that she continuously made, or attempted to make, the interest payments prescribed in the contract and repeatedly sought to negotiate a payment schedule with mutually agreeable terms for the principal. Those allegations are sufficient to support a claim that the negative report was inaccurate, that the inaccuracy was objectively verifiable based on the terms of the contract, and that Truist failed to conduct a reasonable investigation. The Court withholds ruling on the remaining claims pending further proceedings regarding Count One.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Truist Bank's Motion for Judgment on the Pleadings* (Document 26) be **GRANTED** in part, and that Count One be **DISMISSED without prejudice**. The Court further **ORDERS** that any motion to amend, with an attached amended pleading, be filed within **FOURTEEN (14) days** of entry of this Order.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: November 5, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA